UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAX BRADFIELD,

        Plaintiff,

Case No. 1:07-cv-1016

Hon. Robert J. Jonker

v.

CORRECTIONAL MEDICAL SERVICES,
*et al.*,

        Defendants.
                                /

### REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss filed by defendants Correctional Medical Services, Inc. ("CMS") and P.A. Daniel F. Spitters (docket no. 20), a motion for summary judgment filed by defendants Judy Gracik, Shawn L. Griffin and Michael E. Wilkinson (docket no. 30), a motion for summary judgment filed by defendant Teresa Simmons (docket no. 47), a motion for summary judgment filed by defendant Timothy Jones (docket no. 52), and plaintiff's combined "motion for partial conversion of defendants' motion to dismiss to one for summary judgment, for discovery if said motion is converted in full, for enlargement of time to respond, and for enlargement of page limits" (docket no. 22).

### I. Background

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has filed a 47-page complaint, consisting of 15 counts, alleging defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff's claims arise from events that occurred from January 2005 through July 2005. Specifically, plaintiff alleges that defendants failed to treat him for symptoms of a heart attack that he suffered in the early months of 2005, and that he suffered a second heart attack in July 2005.

### II. Discussion

The five motions under consideration in this report and recommendation attempt to resolve what should be a relatively simple and straightforward question, i.e., did plaintiff exhaust his administrative remedies with the Michigan Department of Corrections ("MDOC") prior to filing this civil rights action. For the reasons set forth below, I conclude that plaintiff did not exhaust his remedies and recommend dismissal of the action.

**A.     Exhaustion requirement**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.[1] Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being

---

[1] The court notes that the MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.* In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, it may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

4

**B.     Defendants' motion to dismiss and plaintiff's combined motion to convert the motion into a motion for summary judgment**

Defendants CMS and Spitters have moved to dismiss plaintiff's action for lack of exhaustion pursuant to Fed. R. Civ. P. 12(b)(6). Rather than filing a response to this motion as required by W.D. Mich. LCivR 7.2(c), plaintiff has moved for the "conversion" of the motion to dismiss into one for summary judgment, seeking discovery and an extension of time to respond. *See* docket no. 22.

Under Fed. R. Civ. P. 12(b)(6), a complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir.2005). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action . . . [t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted).

A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care*

*Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, -- F.3d --, 2008 WL 2469405 at *4 (11th Cir. June 20, 2008). "Because exhaustion of administrative remedies is a matter in abatement *and not generally an adjudication on the merits,* an exhaustion defense [under the PLRA] . . . *is not ordinarily the proper subject for a summary judgment;* instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment. *Id.* (internal quotation marks omitted) (emphasis added).

Here, defendants' motion to dismiss includes a "grievance inquiry" from the MDOC listing three grievances filed by plaintiff in 2005 and 2006, and copies of those grievances, the MDOC's responses to the grievances, and plaintiffs' appeals. *See* Exh. A attached to defendants' motion to dismiss. Defendants contend that this court can take judicial notice of these documents without the necessity of converting the motion to dismiss into a motion for summary judgment. The court agrees.

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. As a general rule, this court may take judicial notice of documents filed in a state agency proceeding. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008)

(a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2nd Cir. 2003) (judicial notice may be taken of public filings at the NLRB); *Menominee Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("[j]udicial notice of historical documents, documents contained in the public record and reports of administrative bodies is proper" and the court may consider such judicially noticed documents without converting a motion to dismiss into a motion for summary judgment); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-22 (S.D.Cal. 2006) ("[t]he Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: documents attached to the complaint, documents incorporated by referenced in the complaint, or matters that can be judicially noticed"); *Smart v. Goord*, 441 F.Supp.2d 631, 637 (S.D.N.Y. 2006) ("[w]hen ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Keating v. University*

*of South Dakota*, 386 F.Supp.2d 1096, 1102 (D.S.D. 2005) (court took judicial notice of administrative proceedings filed by defendants pursuant to Fed.R.Evid. 201); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 580-581 (W.D.N.Y. 2000) (although documents filed by plaintiff and defendants with various agencies were not attached to plaintiff's complaint, court could properly consider the documents on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); plaintiff had notice of the documents and relied upon them in bringing this action).

Courts have taken judicial notice of a prisoner's administrative grievances for purposes of determining exhaustion of administrative remedies in a motion to dismiss a § 1983 action under Rule 12(b)(6). *See, e.g.*, *Holton v. Wisconsin*, No. 07-C-0402, 2008 WL 1777226 at *1 (E.D.Wis.. April 16, 2008) (because the plaintiff's prison grievances were filed under the states inmate complaint review system, "these documents are public records, the court may take judicial notice of and consider them in deciding the motion to dismiss"); *Armstrong v. Scribner*, No. 06-cv-852, 2008WL 268974 at *6 (S.D.Cal. Jan. 30, 2008) (court took judicial notice of the fact that the plaintiff filed only one inmate grievance alleging the types of issues raised in his § 1983 complaint and that the grievance was denied at all available levels of administrative review); *Walker*, 454 F. Supp. 2d at 1023 (documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Almond v. Lesatz*, No. 06-c-446, 2006 WL 3113374 at *1 (W.D.Wis. Oct. 29, 2006) (court can consider documentation of plaintiff's use of the prison grievance procedure without converting the motion to dismiss into a motion for summary judgment because such documentation is a matter of public record).

These decisions are consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create such an administrative record for the court. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, -- U.S. --, 127 S.Ct. 910, 914-915 (2007). Plaintiff's grievance, and the MDOC's response to that grievance, is part of an administrative review process by a state agency. Under these circumstances, I agree with the opinions expressed in *Holton*, *Armstrong*, *Walker* and *Almond*, and conclude that the court may take judicial notice of these administrative proceedings for purposes of resolving defendants' motion to dismiss. Accordingly, plaintiff's motion to convert defendants' motion to dismiss to one for summary judgment (docket no. 22) is unnecessary and should be denied.

### C. Defendants CMS and P.A. Spitters

Defendants have presented copies of three grievances filed by plaintiff against these two defendants, as found on the MDOC Grievance Inquiry database. These are as follows:

#### 1. Grievance LRF 2005-05-527-13a

This grievance, which was filed on May 4, 2005, lists incident dates of April 19 and 27, 2005, and involved plaintiff's termination from his work assignment. Neither CMS nor Spitters are mentioned in this grievance, which does not address the adequacy of plaintiff's medical

treatment by these defendants. Accordingly, plaintiff cannot rely on this grievance to support his action against these two defendants.

### 2.      Grievance LRF 2005-09-1191-28e

This grievance lists an incident date of July 12, 2005, when plaintiff apparently suffered a heart attack. The grievance complains of medical treatment received back to January 2005, approximately six months prior to the incident. Plaintiff did not file this grievance until August 13, 2005, more than one month after the incident. The MDOC rejected the grievance at all three steps of the grievance process as untimely, finding that plaintiff had not provided any evidence to support the allegation that his medical condition prevented him from filing timely grievances. Plaintiff has not properly exhausted this grievance. *Jones*, 127 S.Ct. at 922-23; *Woodford*, 548 U.S. 81. Accordingly, plaintiff cannot rely on this grievance to support his action against defendants CMS and P.A. Spitters.

### 3.      Grievance LRF 2006-12-1707-28e

This grievance was directed against Dr. Craig Hutchinson. It appears to be both unrelated to the issues in this action and untimely. Plaintiff filed this grievance on November 29, 2006, and listed an incident date of November 24, 2006, which is the date plaintiff states that he sent Dr. Hutchinson a letter complaining about his medical care from January 2005 through July 2005. Dr. Hutchinson is not a party to this action. Furthermore, to the extent this grievance was filed with respect to plaintiff's earlier medical treatment, the grievance was untimely, having been filed nearly 1 ½ years after plaintiff's hospital admission in July 2005. The MDOC rejected the

10

grievance at all steps as untimely. Accordingly, plaintiff cannot rely on this untimely grievance, which did not name these defendants, to support his action against defendants CMS and Spitters.[2]

For these reasons, the motion to dismiss filed by defendants CMS and Spitters (docket no. 20) should be granted and these two defendants should be dismissed from this action.[3]

### D. Defendants Gracik, Wilkinson, Griffin, Jones and Simmons

Defendants Gracik, Wilkinson, Griffin, Jones and Simmons are MDOC employees (and are collectively referred to herein as "MDOC defendants"). They have filed motions for summary judgment pursuant to Fed. R. Civ. P. 56 for lack of exhaustion. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the court previously discussed, a motion for summary judgment is an appropriate procedure to raise the affirmative defense of exhaustion of prisoner grievances under the PLRA. However, as discussed above, the court should treat the exhaustion issue as a motion to dismiss if raised within a motion for summary judgment.[4]

---

[2] Plaintiff stated that he was filing the grievance "pursuant to" the rules expressed in *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005) and *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003). Presumably, plaintiff cited *Thomas* in his effort to justify filing an untimely grievance, i.e., *Thomas* held that an inmate exhausted his grievance "regardless of whether the prisoner complied with the grievance system's procedural requirements." *Thomas*, 337 F.3d at 733. However, the court cannot rely on either of these decisions. *Thomas* has been abrogated, *see Woodford*, 548 U.S. at 87, and *Jones Bey* has been vacated, *see Bey v. Johnson*, 127 S. Ct. 1212 (2007).

[3] Even if the court construed this motion to dismiss as one for summary judgment, there were no genuine issues of fact regarding the exhaustion issue. *See* discussion, *infra*.

[4] Since the *Jones v. Bock* decision, the parties to prisoner civil rights litigation, as well as the courts, have expended substantial resources to litigate the issue of whether MDOC inmates have filed the three papers (i.e., a grievance, a step II appeal and a step III appeal) necessary to exhaust the administrative remedy prior to filing a § 1983 civil rights action. By evaluating the exhaustion issue under the summary judgment standard, without taking judicial notice of the state agency's resolution of the prisoner's grievance, the courts have effectively created a separate lawsuit, within a prisoner civil rights action, to adjudicate the issue of

Like defendants CMS and Spitters, the MDOC defendants have supplied the court with an MDOC Grievance Inquiry identifying plaintiff's three grievances, i.e., Grievance Nos. LRF 2005-05-527-13a, LRF 2005-09-1191-28e and LRF 2006-12-1707-28e. For the reasons discussed above, these grievances are either irrelevant to plaintiff's action or not properly exhausted.

### E.     Plaintiff's affidavits

Plaintiff's affidavits in opposition to defendants' motion for summary judgment do not address the narrow issue of whether plaintiff performed the three steps necessary to exhaust his grievances with the MDOC. Plaintiff does not supply copies of other grievances or dispute the authenticity of the administrative records presented by defendants. Rather, plaintiff's affidavits collaterally attack the validity of the MDOC's decision to reject the grievances. *See* Plaintiff's Affidavit (Feb. 25, 2008) (docket no. 34) and Plaintiff's Affidavit (April 1, 2008) (docket no. 42).

Plaintiff does not dispute that he filed untimely grievances and that the MDOC rejected those grievances. Rather, in his affidavits, plaintiff attempts to justify his untimely acts. In his first affidavit, plaintiff acknowledges that he was aware of a possible grievance as early as July 13, 2005, when he questioned Dr. Abdellatif "in depth regarding the events and incidents which

---

exhaustion. For example, in the present case, the parties have filed some 17 motions, briefs and affidavits (docket nos. 20, 22, 23, 28, 30, 31, 33, 34, 36, 38, 39, 41, 42, 47, 48, 52, 53) consisting of well over 300 pages, on the sole issue of whether plaintiff filed his "three papers" before commencing this § 1983 action. Surely, Congress did not intend to "streamline" the prison litigation process by requiring the courts to engage in months of motion practice (and possibly a trial) on the preliminary issue of exhaustion. *See Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) ("courts should not have to hold time-consuming evidentiary hearings in order simply to determine whether it should reach the merits or decline under [§ 1997e(a) ]"). Given that the sole issue raised in the affirmative defense of exhaustion is whether the prisoner properly followed the MDOC's three-step grievance procedure, it seems unnecessary for the court to transform the issue of exhaustion into a jury question in every prisoner lawsuit. "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress' intent in enacting the PLRA's exhaustion requirement; that is, to 'reduce the quantity and improve the quality of prisoner suits.'" *Bryant*, 2008 WL 2469405 at *5 (*quoting Porter*, 534 U.S. at 524) (footnote omitted).

occurred between the dates of January 13 and July 9, 2005" and believed that the doctor would investigate those complaints. Plaintiff's Aff. at ¶¶ 11-15 (docket no. 34). Plaintiff then justifies his failure to file timely grievances, stating that he could not leave his cell for five days after his discharge from the hospital and that he was suffering from a variety of medical problems and medication side effects until "at least November 2005." *Id.* at ¶¶ 18, 20. In its responses to Grievance No. LRF 2005-09-1191-28e, the MDOC considered and rejected plaintiff's claim that he was physically unable to file timely grievances. Plaintiff cites no authority, and this court is aware of none, which authorizes a federal district court to act as a super-appellate court to reverse the MDOC's decision rejecting a prisoner grievance as untimely.[5]

In the second affidavit, plaintiff states that he had "doubts and suspicions" about his medical treatment, that he performed "extensive medical research . . . over the course of approximately two (2) years subsequent to the complained of events," and that it was only after he performed this research that he "was able to discern that the Defendants' acts and omissions were not based on medical judgment." Plaintiff's Aff.at ¶¶ 3-5 (docket no. 42). Assuming, *arguendo,* that this may all be true, plaintiff's affidavit does not render his filings any less untimely, because the MDOC grievance procedure does not provide prisoners with an unlimited time to research background material prior to filing a grievance.

---

[5] Even if this court was performing an appellate review of the MDOC's administrative action, the court would not allow one party to unilaterally change the administrative record. *See, generally, IMS, P.C. v. Alvarez*, 129 F.3d 618, 623-24 (D.C. Cir. 1997) (after observing that "[i]t is a widely accepted principle of administrative law that the courts base their review of the agency's actions on the materials that were before the agency at the time its decision was made," the court rejected the plaintiff's attempts to submit affidavits containing information that should have been submitted to the agency before the dispute reached the courts, because "[t]o allow the affidavits to be considered now would be to permit *ex post* supplementation of the record, which is not consistent with the prevailing standards of agency review").

It is undisputed that plaintiff filed untimely grievances and that the MDOC rejected the grievances on that basis. There is no genuine issue of material fact under dispute. The motions for summary judgment filed by defendants Gracik, Wilkinson, Griffin, Jones and Simmons (docket nos. 30, 47 and 52) should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's combined motion for partial conversion of the motion to dismiss to one for summary judgment, for discovery, for extension of time, and for enlargement of page limits (docket no. 22) be **DENIED**; the motion to dismiss filed by defendants CMS and P.A. Spitters (docket no. 20) be **GRANTED**; and the motions for summary judgment filed by defendants Gracik, Wilkinson, Griffin, Jones and Simmons (docket nos. 30, 47 and 52) be **GRANTED**.

Dated: July 3, 2008 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).